## BATTS *v.* STATE OF INDIANA.

### [No. 24,388.    Filed June 3, 1924.]

1. CRIMINAL LAW.—*Appeal.—Briefs.—Motion to Quash Affidavit.—Statute.*—On appeal from a conviction on a criminal charge, one assignment of error being the overruling of appellant's motion to quash the affidavit, a statement in appellant's brief that the reason assigned in the motion to quash was that the affidavit did not state an "offense or a violation of law" is sufficient, since §2065 Burns 1914, authorizes a motion to quash on the ground that the indictment or affidavit does not "constitute public offense." p. 610.

2. INTOXICATING LIQUORS.—*Transportation.—Affidavit.—Sufficiency.—Statute.*—In an affidavit charging the unlawful transportation of intoxicating liquor under the act of February 26, 1923 (Acts 1923 p. 70), it is not necessary to negative the exceptions in the statute, but it is necessary to characterize the act as unlawful. p. 611.

3. INTOXICATING LIQUORS.—*Transporting in Automobile.—Seizure without Search Warrant.*—Intoxicating liquor found in an automobile at the time of the arrest of the occupant thereof is not competent evidence against such occupant when the officers making the arrest had no search warrant authorizing the search of the car. p. 614.

4. INTOXICATING LIQUORS.—*Unlawful Search.—Finding of Liquor.—Does not Validate.*—A search for liquor which was unlawful when it began does not becomes lawful because liquor was found. p. 616.

5. CRIMINAL LAW.—*Unlawful Search and Seizure.—Evidence.—Competency.*—Evidence procured by unlawful search and seizure is not competent against a defendant charged with crime relating to the articles seized. p. 616.

From Putnam Circuit Court; *Thomas W. Hutchison,* Special Judge.

Stella Batts was convicted of unlawfully transporting intoxicating liquor and appeals.    *Reversed.*

*Edward W. Little* and *Earl W. Little,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* Deputy Attorney-General, for the State.

WILLOUGHBY, J.—This was a prosecution charging the appellant with the transporting of intoxicating liquor under the Prohibition Law of 1917, Acts 1917 p. 15, as amended by the act of 1921, Acts 1921 p. 736, and as further amended by the act of 1923, Acts 1923 p. 70. That act provides that "it shall be unlawful for any person to manufacture, transport,  *  *  *  any intoxicatin liquor, except as in this Act provided,  *  *  *."

The appellant filed a motion to quash the affidavit for the reason that it did not state "an offense or a violation of the law."    This motion was overruled, to which ruling of the court, the appellant at the time excepted. The appellant then waived arraignment and pleaded not guilty to the charge against her.    The trial was by the court without a jury, and the court found the appellant guilty and fined her in the sum of $100 and sentenced her to the Woman's State Prison for six months.    Appellant then filed a motion for a new trial, which was overruled, and to which ruling, the appellant excepted. From such judgment, the appellant appeals and assigns as error:    (1) The overruling of appellant's motion to quash the affidavit; (2) the overruling of appellant's motion for a new trial.

We will first consider the motion to quash.    The state objects to consideration of this motion because the motion is not set out in appellant's brief. This objection is not well taken.    In appellant's

brief, she says that the reason for filing the motion to quash was that the affidavit did not state an "offense or a violation of law." Section 2065 Burns 1914, Acts 1905 p. 584, sets out four reasons for which an indictment or affidavit may be quashed. The second of these reasons is that the facts stated in the indictment or affidavit do not constitute a public offense. This is substantially the same as the reason given in appellant's motion to quash and is sufficient.

The appellant says that the affidavit failed to charge the appellant with having "unlawfully" committed the offense charged. An examination of the statute 2. discloses that not all transportation of intoxicating liquor is unlawful. The statute says such transportation shall be unlawful except as in this Act provided. It is not necessary to negative exceptions contained in the statute in the affidavit charging the offense, but it is necessary to characterize the act alleged to be a crime as "unlawful." It was error for the court to overrule appellant's motion to quash. See, Bishop, Criminal Procedure (3d ed.) §503; *State* v. *Maddox* (1882), 85 Ind. 585; *Sovine* v. *State* (1882), 85 Ind. 576; *Scudder* v. *State* (1878), 62 Ind. 13; *Stropes* v. *State* (1889), 120 Ind. 562; *State* v. *Closser* (1912), 179 Ind. 230; *Asher* v. *State* (1924), 193 Ind. 702, 143 N. E. 513 (overruling petition for rehearing).

Appellant claims that it was error to overrule her motion for a new trial because the finding of the court was not sustained by sufficient evidence and was contrary to law. It is not necessary to consider these questions because the judgment must be reversed for error of the court in refusing to sustain the motion to quash the affidavit, but in view of the fact that the cause may be tried again upon an amended affidavit it would be well to consider the evidence upon which the court made its finding.

There is evidence to the effect that on March 1, 1923, the sheriff of Putnam county left Greencastle about 1:30 p.m. with five deputies, and drove in an automobile out on the old Rockville road or Ocean to Ocean Highway. Two of these men were armed with rifles and the others had revolvers. The sheriff and two of his men went to the top of the big hill east of Walnut bridge and the other two stopped down along the roadside by a barn. The sheriff had a signal up—a red flag—the sheriff said the red flag was a signal and that "when you want to stop anybody it is better to give them a signal than to try to stop them." The sheriff said he had no knowledge of any particular violations of the law, but searched machines passing along the highway, but did not find any liquor. When this appellant and her husband were seen coming, the sheriff said he had no suspicion that anything was wrong with them, but he and his deputies walked out in the road and were standing in the middle of the road. One deputy had a rifle. When the appellant's husband saw the red flag and the men step out into the middle of the road, one armed with a rifle and the others with revolvers, he turned around and started the other way, going as fast as the car would take them, but the sheriff had placed two men at an old barn at the roadside between Walnut bridge and the top of the hill. One of the men thus stationed at the roadside opened fire on the fleeing car and was so successful that one front tire and one hind tire were punctured with bullets and the radiator disabled, but the car was kept going until they were in front of a dwelling house, thinking, as they said, they would not be shot in front of the house.

There is further evidence to the effect that when the sheriff stationed these two deputies at the old barn at the roadside, they were instructed by the sheriff to shoot if persons did not stop when they ordered them to do

so. One of these men ordered the appellant and her husband, who was driving the car, to stop. The man who did the shooting testified that he had no warrant for the arrest of anyone and did not know that any law had been violated but he had been told by the sheriff that he had a right to stop any person without a warrant on the highway although the person was not a violator of the law, and acting on these instructions, he ordered the appellant and her husband to stop, and they not stopping, he proceeded to shoot the tires with his rifle; "I fired three shots all told," he said. When the appellant and her husband turned and went in the other direction from the sheriff and his deputies and the red flag, the sheriff says he got in his car and followed. He said he heard several shots and had authorized shooting to stop cars when halted, although there was no evidence of guilt except that the party failed to stop when ordered to do so. When they caught up with the appellant and her husband who was examining the tires, they say he was on the top of the hill, "the machine was down, the tires down, and the radiator down."

It appears from the testimony of the sheriff and his deputies, who are not contradicted, that the appellant and her husband were traveling in a Ford coupe along the Ocean to Ocean Highway. That the sheriff and his assistants had no search warrant for anyone; that they saw no evidence of the violation of any law by the appellant or her husband, and did not suspect them of any when the sheriff and his deputies, all armed, walked out in the middle of the road in front of them; that the appellant's husband, driving the car, then turned around and started to go in the opposite direction from the armed men; that he gave as a reason for turning that he thought they were highwaymen; that the armed men stationed at an old barn on the roadside, without seeing

or suspecting any violation of the law, ordered them to halt and, on their failing to do so, shot up and disabled their car and then, after being joined by the sheriff, arrested them.   Their only excuse for the arrest is that the appellant and her husband did not stop when ordered to do so.   When the sheriff had caught up with the fleeing man and woman in their disabled Ford coupe, the sheriff's deputy, Mr. Donahue, got out of the car first and Mr. Batts, appellant's husband, said to him, "Are you the man that was shooting at me?" and Mr. Donahue said, "No, I was not shooting at you but at your tire", and the appellant and her husband were then arrested by the sheriff.   The sheriff says one or two machines went by before these persons came along.   "We did not hold them up, we compelled them to stop and just looked into the car and told them to go on."

The testimony of the appellant and her husband was to the effect that they lived near Indianapolis, and that Mrs. Batts' father lived at Terre Haute, and that he had written her on February 28, that he was sick and wanted to see her and that, in pursuance to that request, they had gone to Terre Haute; that her husband drove the car and she had nothing to do with the management or control of it; that they came back by way of Rockville because they had learned the road was better that way; that they had no intoxicating liquor in the car or on their persons.   No intoxicating liquor was found in the car.

There was some evidence that Mr. Batts, after his car was shot up, threw something out.   Some witnesses for the state testified that they went to the place 3.   and found some wooden kegs and jugs that smelled like they had had whisky in them.   This evidence was admitted over the appellant's objections that they were procured by an unlawful search and

seizure of appellant's effects without any search warrant in violation of appellant's constitutional rights. If it is true that the Batts had in their car intoxicating liquor at the time of their arrest, it is also true, according to the testimony of the sheriff and his deputies, that the sheriff, in accomplishing its capture, violated the constitutional rights of the appellant as guaranteed by Art. 1, §11 of the Constitution of Indiana, §56 Burns 1914; *Callender* v. *State* (1923), 193 Ind. 91, 138 N. E. 817.

Art. 1, §11 Constitution, §56 Burns 1914, provides as follows: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable search or seizure shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the person or thing to be seized.

A similar provision is found in the United States Constitution and the constitution of nearly every state in the union.

In *Hughes* v. *State* (1921), 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639, it was held that where police officers arrest one on the highway without a warrant or evidence of commission of crime in their presence, evidence discovered by the search of his person and conveyance subsequently to the arrest cannot be utilized to secure his conviction.

*Hughes* v. *State, supra,* finds support by analogy in *Roberson* v. *State* (1901), 43 Fla. 156, 29 So. 535, 52 L. R. A. 751; *Pickett* v. *State* (1896), 99 Ga. 12, 25 S. E. 608, 59 Am. St. 226; *State* v. *Lutz* (1919), 85 W. Va. 330, 101 S. E. 434; *Douglas* v. *State* (1921), 152 Ga. 379, 110 S. E. 168; *Caffinni* v. *Hermann* (1914), 112 Me. 282, 91 Atl. 1009; *People* v. *Marxhausen* (1919), 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505; *Gouled* v. *United States* (1921), 255 U. S. 298, 41 Sup. Ct.

261, 65 L. Ed. 647; *Youman* v. *Commonwealth* (1920), 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303; *Amos* v. *United States* (1920), 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; *U. S. Fid. & Guar. Co.* v. *State, ex rel.* (1919), 121 Miss. 369, 83 So. 610; *State* v. *Peterson* (1920), 27 Wyo. 185, 194 Pac. 342, 13 A. L. R. 1284. See, also, *United States* v. *Slusser* (1921), 270 Fed. 818, and cases there cited; *United States* v. *Kelih* (1921), 272 Fed. 484; *United States* v. *Rykowski* (1920), 267 Fed. 866; *Dukes* v. *United States* (1921), 275 Fed. 142, and cases there cited.

A search for liquor which was unlawful when 4 it began does not become lawful because liquor is found. *United States* v. *Slusser, supra.*

Evidence procured by an officer by unlawful search and seizure is not admissible against a defendant.

5. *Callender* v. *State, supra; Gouled* v. *United States, supra; Amos* v. *United States, supra.*

For error in overruling appellant's motion to quash the affidavit, the judgment must be reversed. Judgment reversed with instructions to sustain appellant's motion to quash.