## DUMAS *v*. STATE OF INDIANA.

[No. 24,544.   Filed December 17, 1925.]

1. INDICTMENT.—*Affidavit held sufficient by treating unnecessary word as surplusage as authorized by statute.*—An affidavit charging that the defendants "did then and there unlawfully, feloniously *did* have in their possession and under their control a certain manufacturing device, still, etc.," after naming the county and giving the date, was *held* sufficient by treating the second "did" as surplusage as authorized by clause 6 of §2225 Burns 1926, §2063 Burns 1914.   p. 125.

2. INTOXICATING LIQUORS.—*Evidence obtained by officers without search warrant who forced their way into defendant's home should have been excluded.*—In a prosecution for having possession of a still for the manufacture of intoxicating liquor, evidence obtained by officers without a search warrant who forced their way into defendant's dwelling house was not admissible, and, on proper objection, should have been excluded.   p. 127.

From Vigo Circuit Court; *John P. Jeffries,* Judge.

Adonai Dumas was convicted of having possession of a still for the manufacture of intoxicating liquor, and he appeals.   *Reversed.*

*Randolph H. Mayes* and *Josiah T. Walker,* for appellant.

*U. S. Lesh,* Attorney-General, and *Owen S. Boling,* for the State.

MYERS, J.—On March 28, 1923, appellant, with another, was charged by affidavit with having posses-

sion and control of a certain manufacturing device, still and manufacturing material for the manufacture of intoxicating liquor. Counsel for the state seem to be under the impression that the affidavit herein was predicated upon §1, Acts 1921 p. 736, amending §4 of an act approved February 9, 1917. Acts 1917 p. 15. However, the record before us affirmatively shows that the charge was based upon §1 of an act approved March 1, 1923. Acts 1923 p. 107. The judgment, in addition to a fine, was that appellant be imprisoned in the Indiana State Prison for a period of not less than one nor more than five years. The errors assigned question the ruling on the motion to quash and the ruling on the motion for a new trial.

The affidavit charges that Adonai Dumas, "late of said county, on or about the 3rd day of March, A. D. 1923, at said County and State aforesaid, did then and there unlawfully, feloniously did have in their possession and under the control certain manufacturing device, still," etc.

It is claimed that the affidavit does not show: (1) That the possession or control of the manufacturing device was unlawful and felonious; (2) that the offense attempted to be charged was committed within two years; and (3) that the affidavit was bad for failure to state the offense in plain and concise language.

The inadvertent wording of this affidavit should not go unnoticed nor should we fail to remind trial courts of the growing inclination of inattention to the structure of indictments or affidavits by those charged with that duty. Our state Constitution, Art. 7, §5, requires this court to give a statement in writing on all questions necessary to be decided. In compliance with this constitutional provision, much has been and will continue to be said of little value to the legal profession generally, unless our trial courts require the facts consti-

tuting an offense to be stated as the statute directs. §2202 Burns 1926, §2040 Burns 1914.

The affidavit in the instant case charged that the defendants "did then (March 3, 1923) and there (Vigo county, Indiana) unlawfully, feloniously did have

1.     (in the past, when or where not stated) in their possession and under their control," etc. Treating the word "did" last used in the affidavit as surplusage, as we may do on motion to quash (cl. 6, §2225 Burns 1926, §2063 Burns 1914), and respecting the comma after "unlawfully," the affidavit would read as if written, "did then and there unlawfully have in their possession, did then and there feloniously have in their possession." Either of these readings, in connection with the other facts stated; was sufficient to charge the offense, and meet the objections urged against the pleading. *Simpson* v. *State* (1925), *ante* 77, 149 N. E. 53.

Pertaining to the motion for a new trial, the question of the admission of certain evidence, without which there could have been no conviction in this case, was saved by timely objections and exceptions reserved to each of the rulings. There is no conflict in the evidence relative to the material facts which control the decision of this case. Concerning some minor matters as to what occurred immediately before and at the time appellant was arrested, there is slight conflict. Briefly stated, it appears that on the morning of March 3, 1923, the sheriff of Vigo county, who had in his possession a search warrant issued by the judge of the Vigo Circuit Court on February 27, 1923, the deputy sheriff and three federal prohibition enforcement officers, left Terre Haute in obedience to the command of the before-mentioned warrant to enter the house or premises of one Theopolis Verplaetse situate upon a certain described tract of land about seven miles northwest of the city of Terre Haute, and search the same for in-

toxicating liquors. A search of Verplaetse's premises was made without finding anything in the way of intoxicating liquor or implements for the manufacture thereof. When nothing was found at Verplaetse's house, one of the prohibition officers and the deputy sheriff started on a search of the neighborhood. They crossed Verplaetse's farm to the southeast, and then across a field of a Mr. Sullivan, following some wagon tracks leading to the farm in the possession of appellant as a tenant of a Mrs. Clute, and then to the residence thereon occupied by him and his family. This residence was about one mile south and a quarter of a mile east of Verplaetse's residence. Access to appellant's residence and to the residence of a Mr. Penington from the public highway was along a lane on the west line of Verplaetse's farm to his south line, thence east a short distance, thence about one-half mile across a field belonging to Mr. Sullivan, thence north and east a quarter of a mile over the land of appellant to his yard gate about forty yards from the door of his four room residence.

The prohibition officer testified that about the time or shortly after he reached the farm of appellant, he could smell cooking mash and followed the line of this odor, as indicated by his sense of smell, across appellant's farm and through his yard to the door of the house where appellant was standing. "I told him that I wanted to look into his house because I knew there was a still there. I could smell it. He wanted to know if I had a search warrant. I told him I did not, but I knew there was a still there. He stepped to the side of the door and I stepped in and there was a still." The deputy sheriff was about eight or ten feet behind the prohibition officer. The still in operation was in a room in the rear of the one entered by the officers. Upon the finding of the still and a quantity of mash by the

officers above mentioned, the sheriff was then brought in, the still and mash seized, placed in a wagon and hauled away.  Revolver practice then occupied the attention of the sheriff and one of the federal officers, using a coal oil can of appellant as a target.  There is some conflict in the testimony of the officers as to whether or not the still could be seen from the open outside door.  However this may be, it is conceded on all hands that none of the officers had a search warrant empowering them to enter upon and search the premises of appellant.  They forced their way into his dwelling house and by this means obtained the information about which they testified.  The admissibility of this evidence was challenged before the trial by a motion to suppress, but the court refused to rule on the motion until after the evidence was heard at the trial upon the merits, and then overruled it.  At the trial, appellant timely objected to the testimony of the officers as to what was said and done, what they saw in the way of a still, mash or other apparatus upon entering appellant's home, or what they did in the way of removing a still, stove and a quantity of mash there found; but all of this testimony was admitted and a motion to strike it out was overruled.

In the case of *Gmeiner* v. *State* (1925), *ante* 43, this court recently said:  "Beyond question, the dwellings and premises of citizens of this state are

2.   under the highest protection against search, and are not to be invaded, save and except upon full compliance with all constitutional and statutory requirements."  It clearly appears that no attempt was made to comply with the statute authorizing an invasion of appellant's home, nor did the officers respect any of his constitutional rights pertaining to unreasonable search or seizure.  The most that can be said of the evidence in this case is that appellant was con-

victed solely upon evidence obtained by force and compulsion. The search and seizure was therefore unlawful. Hence, the evidence thus procured was not admissible against appellant. *Batts* v. *State* (1924), 194 Ind. 609, 144 N. E. 23. The admission of this evidence was error for which the judgment must be reversed.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.