The defendant is charged in an information with the commission of the crime of forgery or counterfeiting stamps or labels in four counts in violation of § 53-347 of the General Statutes, in making untrue and misleading statements *Page 43 
in four counts in violation of § 53-365, and with the crime of conspiracy in violation of § 53-197 — all occurring on or about May 11, 1961, at Meriden, Connecticut.
On June 24, 1961, the defendant filed a motion to suppress and return certain documents and invoices, as more fully described in the state's bill of particulars, upon the ground of a warrantless search and seizure of the defendant's premises, which consist of a factory building located at 34 Cambridge Street in the city of Meriden, in violation of the fourth amendment to the constitution of the United States and in violation of article first, § 8, of the constitution of the state of Connecticut. The court heard argument upon the motions on July 3, 1961, and thereafter, on July 10, 1961, evidence was taken on the motions. In the memorandum of law in support of the motion to suppress and return what the defendant characterizes as "unconstitutionally seized evidence," the court's attention has been directed to the very recent decision of the United States Supreme Court in Mapp v. Ohio,367 U.S. 643, decided on June 19, 1961, in which the court ruled (p. 654): "Today we once again examineWolf's [Wolf v. Colorado, 338 U.S. 25 (1949)] constitutional documentation of the right to privacy free from unreasonable state intrusion, and, after its dozen years on our books, are led by it to close the only courtroom door remaining open to evidence secured by official lawlessness in flagrant abuse of that basic right, reserved to all persons as a specific guarantee against that very same unlawful conduct.We hold that all evidence obtained by searches andseizures in violation of the Constitution is, by thatsame authority, inadmissible in a state court" (italics supplied).
It has long been the established law in this state that the admissibility of evidence is not affected by *Page 44 
the illegality of the means through which the party has been enabled to obtain the evidence. State v.Griswold, 67 Conn. 290, 306; State v. Magnano,97 Conn. 543, 546; State v. Reynolds, 101 Conn. 224,231; Pickett v. Marcucci's Liquors, 112 Conn. 169,173; State v. Carol, 120 Conn. 573, 575; see 8 Wigmore, Evidence (McNaughton Rev.) § 2183; 2 Wharton, Criminal Evidence (11th Ed.) § 771. Our rule was clearly stated by former Chief Justice Maltbie in State v. Carol, supra, 575: "The decisions we have cited determine the law of this State to be that articles offered in evidence, which are relevant to the issue of the guilt or innocence of an accused person, will not be excluded because they may have been seized in violation of the provision in our Constitution forbidding unreasonable searches and seizures; and of course the provisions in the Bill of Rights attached to the United States Constitution have their operation only upon the powers delegated to the Federal government and are ineffective as regards the powers of the individual States." See note, 50 A.L.R.2d 531, 544.
In Wolf v. Colorado, supra, the United States Supreme Court, while stating that the liberties guaranteed by the fourth amendment were among those included in the fourteenth amendment and thereby protected against state action, nevertheless decided that the latter amendment was not violated by a state court's admission of evidence obtained by an unreasonable search and seizure. The Wolf case did not conclusively determine whether the exclusionary rule is a constitutional mandate or whether the sanction of exclusion is only a rule of evidence prompted by a judicial desire to deter governmental officials from violating constitutional liberties. The impact of Mapp v. Ohio, supra, is the determination on the part of the majority of the court to resolve the policy conflict involved by freezing the rule into a *Page 45 
constitutional mold, that is to say, that the exclusionary rule now operates as a constitutional mandate, not as a rule of evidence, upon the state courts.
One of the limitations even upon the federal exclusionary rule is that "[a] warrantless search-and-seizure with consent of the party defendant is not within the rule." 8 Wigmore, Evidence (3d Ed.) § 2184a. The present inquiry, therefore, must be to determine whether the defendant consented to the search and seizure and thereby waived his constitutional privilege.
On May 11, 1961, at or about 11:15 p.m., two private investigators called at the Meriden detective bureau. Officer Nati testified that "[t]hey asked for our assistance in a local investigation" involving the accused. Between 11:30 and 11:45 p.m., three detectives and the two investigators went to the Trumbull Bearing Company on Cambridge Street to find out whether or not the defendant was there. Upon their arrival, they found the factory closed. They waited around for a few minutes, when a station wagon drove up which, according to the police, they believed belonged to the defendant. It turned out to be a vehicle owned by a third person, Raymond Martinson, who had a key to the premises and unlocked the door. After the officers and the investigators made entrance into the factory, Sergeant Doherty telephoned the defendant at his home in Newington and "asked Mr. Trumbull if he wouldn't come down to the office." The defendant replied that "it would take at least half an hour to get to Meriden." The officers and investigators thereupon left the factory and proceeded to the Berlin turnpike for a "coffee break." When they returned to police headquarters, the deskman said that the defendant had already been to the police station but "he had left and went up to the factory." They went back to the factory and arrived there *Page 46 
"between 2:00 and 2:30 A.M." on the morning of May 12. The defendant was told of the nature of the complaint and investigation. After some conversation, the defendant directed the officers to the place where the cartons were located. These contained labels which constituted the subject matter of the complaint and investigation. After they had entered this room, "Mr. Trumbull helped us load them [the cartons] on to a hand truck." These cartons, some twelve to fifteen in number, contained bearing boxes. The defendant "was told that these boxes were going to be confiscated. They were supposedly counterfeit and . . . we were going to take possession as evidence." These boxes were then brought to a garage in the defendant's station wagon. It is conceded by the state that the police officers did not have a search warrant. Upon their first visit to the factory, some of the men looked through the drawers in the filing cabinets and examined certain papers and invoices. It was also developed in the course of the testimony that nothing was said to the defendant about his legal rights, nor was he apprised of his privilege to obtain counsel. The defendant was told by a Mr. Manchester, one of the private investigators, that "they had a right to see these articles" and, being so told, the defendant voiced no objection "not after he said he had the right." A warrant was obtained for the defendant's arrest, charging him with the crimes specified herein, between 10 and 11 a.m., on the morning of May 12.
Whether the actions and conduct of the defendant as described constitute "consent" is not easy of determination. Many courts go so far as to hold that mere acquiescence in the demands of the searching officers is conduct sufficiently voluntary to prevent any subsequent application of the exclusionary rule. State v. Roop, 73 Mont. 177, 179; Commonwealth *Page 47 
v. Meiner, 196 Ky. 840, 842; Massei v.United States, 295 F. 683, 684 (4th Cir.). Yet other decisions maintain that mere acquiescence in an official's demands is not to be construed as consent.Dukes v. United States, 275 F. 142, 145 (4th Cir.); State v. Luna, 266 S.W. 755, 756 (Mo.App.). The ramifications of this exception are indeed confusing. In State v. Griswold, 67 Conn. 290, an envelope containing two photographs was offered in evidence by the state and objected to by the defendant upon the ground that its taking and production violated his constitutional rights. Upon the evidence taken, in the absence of the jury, the trial judge found that the office of the accused, at the time when this envelope was found by the police officers and taken away by them, was in the care and possession of one Butler, as the servant and agent of the accused, and that Butler gave permission to the officers to enter the office and make the search therein, assisted them in making the search and consented to the taking away by them of the articles. The trial judge found (p. 304) "that the accused must be holden to have consented to the taking away by the officers of the said articles." "We do not, however, place our decision on this ground alone," said Chief Justice Andrews (p. 305). The court found (p. 306) that "no constitutional provision was violated by permitting the jury to see the envelope. And even if it had been taken from the possession of the defendant by a trespass, as he claims, that would have been no valid objection to its admissibility."
In the case at bar, no great emergency existed which prevented the officers from obtaining a search warrant. When one considers the lateness of the hour (2:00 to 2:30 a.m.), the number of officers who confronted the defendant (five in all), and the claimed right on their part to make the search and *Page 48 
seizure without a search warrant, it would seem that an objection or resistance on the part of the defendant would be a mere nullity. The facts here present a close case. In United States v. Slusser,
270 F. 818 (D. Ohio), two prohibition officers and two city policemen went to the defendant's residence, knocked and were admitted. One of the agents displayed his badge and said they were there to search for liquor. Slusser said: "All right; go ahead." They searched the house and, finding nothing but a one-quart bottle partially filled with whiskey, proceeded to the garage, situated on the house lot. One door was not locked, and they entered. Two of the automobiles therein were found to be loaded with bottles of whiskey. The officers seized the automobiles and drove away. The court(Peck, Dist. J.), as to the legality of the search, ruled (p. 819): "The search so permitted by Slusser, after declaration by the prohibition officer, with a display of his badge, that they were there to search the premises, was not by such consent as will amount to a waiver of constitutional rights, but, on the contrary, it is to be attributed to a peaceful submission to officers of the law." The court also pointed out that "[an] unlawful search cannot be justified by what is found. A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor."
In United States v. Hoffenberg, 24 F. Sup. 989
(E.D.N.Y.), the defendant made a motion to suppress and return personal property seized by arresting officers. In opposition to the motion, the government contended that the defendant gave his consent to a search of his premises. It appeared that the defendant was apprised that police officers were going to search his residence. He submitted to a peaceful search. The court held (p. 990) that "[f]ailure to resist the officers cannot be construed *Page 49 
as a `consent' on the part of the defendant. Certainly, the defendant by not resisting the officers, under the circumstances disclosed, did not waive his constitutional rights against an unreasonable search and seizure. He bowed to the authority of the law as he thought, as represented by the police officers." The court approved the rationale of United States
v. Slusser, supra, and concluded (p. 991): "Where an officer without using physical violence assumes to act in his official capacity ordinarily a law-abiding citizen would not resist a search of his home, even though he knew that the officer was exceeding his authority. Such lack of resistance, however, should not be regarded as a `consent' to an illegal search, but should be regarded as a submission to an officer of the law." An illegal search and seizure "usually is a single incident, perpetrated by surprise, conducted in haste, kept purposely beyond the court's supervision and limited only by the judgment and moderation of officers whose own interests and records are often at stake in the search. There is no opportunity for injunction or appeal to disinterested intervention. The citizen's choice is quietly to submit to whatever the officers undertake or to resist at risk of arrest or immediate violence." Mr. Justice Jackson, dissenting in Brinegar v.United States, 338 U.S. 160, 182.
As the court understands and interprets the decision in Mapp v. Ohio, 367 U.S. 643, we are now under a mandate to recognize not only the binding force of the constitutional provisions referred to therein but their high necessity to protect the sanctity of the home and the privacies of life; and to recognize that the protecting scope of these constitutional provisions is so broad and ample that they embrace all persons, even those accused of crime; and that the duty of giving effect to them rests upon all entrusted under our system with enforcement of *Page 50 
laws. Under the circumstances as disclosed in this case, the motion to suppress must be granted.
Now as to that portion of the defendant's application for an order to return the articles illegally seized, it is sufficient to say that such "a procedure is not known in the practice of this State. It is authorized in Federal courts by statute. . . . There is no similar statute in this State, and in our courts written or oral motions are adapted to every reasonable purpose." State v. Magnano, 97 Conn. 543, 547;State v. Carol, 120 Conn. 573, 576. That portion of the defendant's motion by which he seeks an order for the return of the articles seized must, upon the authority of our decisions, be denied.
The defendant's additional motion is an application for an order requiring and directing the state to permit his counsel to inspect and make a copy of an alleged signed statement which he gave to the police on or about May 16, 1961. Under our rules of practice (Practice Book § 327), rules for civil actions shall apply in criminal cases in so far as they are adapted to such proceedings. See Cir. Ct. Rules 1.1, 3.3.1. And under § 52-197 of the General Statutes, captioned, "Motion for disclosure. Rules," it is provided: "In any civil action, the court, upon motion of either party, may order disclosure of facts or disclosure, production and inspection of papers, books or documents by any party thereto, material to the mover's cause of action or defense, and within the knowledge, possession or power ofthe adverse party . . ." (italics supplied). The defendant must be presumed to have knowledge of the contents of the signed statement he gave to the police. No reasons have been alleged or shown why he lacks knowledge upon the subject. Any knowledge which the state might have would not, under ordinary circumstances, be its exclusively. The defendant is not entitled to have the disclosure, *Page 51 
since the facts were not shown to lie exclusively within the knowledge of the state. Downie v. Nettleton,61 Conn. 593, 595; Hubert v. New York, N.H. H.R. Co., 90 Conn. 261, 270; May v. Young,125 Conn. 1, 9. Moreover, the rule is that "in criminal cases, it is very evident that the accused cannot compel the prosecution to produce documents which he himself has made. Thus, he is not entitled to have incriminating letters, written by him, produced for his inspection; nor to have produced a statement made and signed by him even on the ground that such statement is material to his defense." 2 Wharton, Criminal Evidence (11th Ed.) p. 1354.
 The motion for disclosure is denied.