STATE v. JOHN C. RYAN AND OTHERS.
MELVIN O'LAUGHLIN, APPELLANT.[1]

June 29, 1923.

No. 23,346.

**Articles taken from his abandoned house without warrant admissible against defendant.**

1. The fact that articles offered in evidence in a criminal prosecution against the owner thereof were taken by officers of the law, without a search warrant, from the house where the accused had resided but which he had abandoned when he fled to another state to avoid the consequences of the crime for which he was charged, does not render such articles inadmissible as evidence.

**On defective record no review of testimony in proof of conspiracy.**

2. Upon an appeal from a conviction of attempted robbery, where the record does not contain all the evidence, this court cannot determine whether the testimony fails to disclose a conspiracy so as to warrant the reception of proof of other crimes.

**No prejudicial error.**

3. Record examined and found to contain no reversible error in the rulings upon the admissibility of evidence, the charge, nor in the conduct of the prosecuting attorney.

Defendants were indicted jointly by the grand jury of Ramsey county charged with attempted robbery in the first degree. De-

[1] Reported in 194 N. W. 396.

fendant O'Laughlin was tried separately in the district court for that county before Haupt, J., and a jury, and found guilty as charged in the indictment. From the judgment entered pursuant to the verdict, defendant appealed. From an order denying his petition for the restitution of certain property taken from his domicile, defendant appealed. Affirmed.

*Drill & Drill*, for appellant.

*Clifford L. Hilton*, Attorney General, and *James E. Markham*, Assistant Attorney General, *Harry H. Peterson*, County Attorney, and *Allan M. McGill*, Assistant County Attorney, for respondent.

QUINN, J.

Defendants were indicted jointly, charged with attempted robbery in the first degree, committed at 4 o'clock in the morning on July 17, 1922, at the Park Theater, in the city of St. Paul. Ryan pleaded guilty. Freeman was tried and convicted. The appellant O'Laughlin was tried and the jury returned a verdict of guilty, with a recommendation for clemency. He was 24 years of age and a reformatory sentence was imposed. There is no settled case. The appeal is upon a bill of exceptions.

The block in which the Park Theater is situated is bounded on the north by Dayton avenue, on the east by Snelling avenue, on the south by Selby avenue and on the west by Fry street. The theater is about 150 feet west from Snelling facing south on Selby. June 16, 1922, appellant rented from Mrs. Shugard a small furnished dwelling at 1725 Iglehart, within a few blocks of the theater, paying her rent therefor to July 16. The defendant Ryan, his wife, Julia Churchill and appellant occupied this place until the morning on July 17. They had therein their wearing apparel and other personal belongings, also shotguns, revolvers, knives, tools and the like, thereafter found and taken by the officers without process and by them turned over to the county attorney.

There is no controversy over the facts surrounding and leading up to the commission of the offense charged in the indictment, except as to the connection of the appellant therewith. Ethan Allen was on duty as a police officer at the theater on the night in ques-

tion.   He was armed with a revolver and a sawed off shotgun loaded with buckshot, and remained in the theater after the show closed. At about 4 o'clock in the morning he heard talking outside and someone trying to effect an entrance into the theater through one of the doors.   As the door opened and one of the bandits entered, the officer commanded him to throw up his hands.   The bandit turned and ran, the officer in close pursuit.   When out on the sidewalk the officer saw two of the bandits running east on the sidewalk toward Snelling and one running west toward Fry street.   With his sawed off shotgun he shot at the two going east, and Ryan fell, hit above the knee, the bone in his leg being broken.   He was armed at the time with a revolver and a loaded shotgun.   The other man continued his flight into the darkness.

Officer Allen testified that just before he fired he heard a shot, and the bullet whiz by him, and at the time he fired he thought he heard a second shot fired by some other person but that he was not certain from which direction they came.   At about that time a squad of detectives appeared at the northwest corner of the theater block, where they saw a man whom they pursued and quickly apprehended, lying on the ground at the rear of a building.   He proved to be the defendant Freeman.   He also was armed with a revolver and a shotgun.   Midway between the southwest and the northwest corners of the theater block near the curb on the east side of Fry street, was a stolen Studebaker car with its lights burning and in it were tools commonly used by safe-breakers.   One of the detectives testified that while pursuing Freeman he saw the appellant with his right arm pressed to his side as though he had been hurt.   It is conceded that appellant appeared at the Iglehart house between 4 and 5 o'clock that morning with 9 shot wounds in his body and right arm; that his arm was broken; that he was bleeding profusely; that at the time of his arrival there Julia Churchill was alone in the house; that she bandaged him as best she could, then called a cab and they went together to Minneapolis and later in the day boarded a train for Milwaukee, at which place appellant first had his wounds dressed by a physician, and that later he was arrested and brought back to Minnesota.

After appellant left the Iglehart house on the morning of July 17, the officers went there in search of a clue. Ryan and Freeman were in prison, Ryan's wife was not to be found, the appellant and Julia Churchill had left for another state. None of them ever returned to the Iglehart house. Under these circumstances the officers entered the house through an open door, without a search warrant, and took therefrom the articles offered in evidence as Exhibits N to Y. The rooms were upset and out of order. There was no one in the house at the time the officers entered. Prior to his trial appellant procured an order requiring the county attorney and police officers to show cause why the articles referred to as Exhibits N to Y should not be restored to the owners. Upon hearing the court denied the motion and dismissed the order. At the trial the state offered in evidence these exhibits, to which appellant objected upon the grounds that no sufficient foundation had been laid, that the same had been obtained in violation of appellant's constitutional rights and in violation of law, and were incompetent, irrelevant and immaterial, it not appearing that any of such articles were used in connection with the commission of the offense charged.

At the time of renting the Iglehart house appellant gave his name as Gordon, said he was married, and that he was engaged in the hotel advertising business. These statements were not true. Coincident with appellant's renting this house began a series of thefts and robberies in the vicinity, characterized by their similarity of accomplishment. On June 18 a stolen Nash car was found. In it was a sawed-off axe. After the theater was broken into a handle which fitted the axe was found in the Iglehart house. Mrs. Shugard testified that it was her axe and that the handle must have been sawed off after she rented the house. June 19 the Oxford theater was entered and the safe opened. July 6 the Montgomery Ward & Company place was entered and ransacked by masked men. When Ryan was arrested a revolver stolen at that time was found in his possession. A shotgun taken at that time was found in Freeman's possession when he was arrested. July 16 the laundry of Schwartz Brothers was broken into, the safe opened and a number of articles taken which, on the following day, were found within a

block of the Park Theater near where Freeman was caught. With these articles were found soap, nitroglycerine and dynamite caps. On August 1 a shotgun loaded with small buckshot was found about 2 blocks from the theater.

It is apparent from the testimony given by the witnesses Allen, Smith, Schultz and Mayer, officers who participated in the affair, that Freeman was the person who ran west on the sidewalk and turned north on Fry street. When taken captive he was in the act of hiding within approximately 150 feet of the stolen Studebaker car, which was at the curb on Fry street directly west of the theater building. By its verdict the jury found that appellant was at the theater that morning. With Freeman fleeing to the west, it follows that appellant must have been running east on the walk with Ryan at the time of the shooting. He turned north on Snelling toward Dayton. An officer testified that he saw him at Dayton. The shotgun found on August first in the grass two blocks to the north toward the Iglehart house was loaded with small shot. If the band of brigands supplied themselves with shells from this house, a fact which the jury might have found from the testimony, then it is no stretch of the imagination to presume that their guns were all loaded with small buckshot, which might account for the difference in the size of appellant's shot wounds for which he contends. A few minutes after the shooting at the theater appellant was at the Iglehart house having his wounds bandaged, preparatory to leaving the state.

If ever there were a case where a jury was justified in finding from circumstantial evidence the connection of an accused with a band of midnight brigands, this is one. Officer Allen heard a shot immediately before he fired at the two men running east, and he thought he heard another at the time he fired, but could not say for certain from what direction they came. He was looking at the two going east and he says that he saw neither of them stop nor hesitate. If this is true, then the shots which he heard must have come from another direction, presumably from the gun of the man going west, who was in a direct line on the walk with the others and the officer was in line between. A shot fired from the west at the

officer could easily have missed him and reached the man running with Ryan.

Appellant insists that the trial court erred: (1) In denying defendant's motion for an order directing the county attorney and police officer to return the articles marked N to Y to the appellant and his associates at the Iglehart house; (2) in receiving evidence of the witness Carr as to the condition of the premises at 1725 Iglehart avenue and as to what he saw and found there; (3) in receiving evidence as to the stolen Nash car and the axe found therein; (4) in receiving in evidence Exhibits N to Y on the grounds above stated; (5) in receiving testimony as to other alleged crimes in the vicinity; (6) in excluding the testimony of the witness Holt relative to the robbery of a Standard Oil Station subsequent to the Park Theater robbery, and other distinct crimes committed shortly after the crime charged in the indictment; (7) in excluding the testimony of George Peterson relating to his receiving gunshot wounds on July 9, near the place where appellant claims to have received his some distance south of St. Paul; (8) in instructing the jury relating to the appellant's alibi; and (9) in refusing appellant's request to instruct.

Appellant insists that the entrance into the Iglehart house by the police officers and the obtaining therefrom of evidence for use against him, amounted to an unreasonable search and seizure forbidden by article 1, section 10, of the state Constitution; that evidence so procured is inadmissible against the accused whose domicile is so entered, under the rule of evidence announced in Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Gouled v. U. S. 255 U. S. 298, 41 Sup. Ct. 261, 65 L. ed. 647; and Amos v. U. S. 253 U. S. 313, 41 Sup. Ct. 266, 65 L. ed. 654. These cases, in our opinion, are not applicable. Whether searches and seizures are unreasonable depends upon the character of the articles procured and the circumstances under which the same are obtained. State v. Stoffels, 89 Minn. 205, 94 N. W. 675.

In the instant case there was no unreasonable search and seizure as contemplated by the constitutional provision. The Iglehart house had been occupied as headquarters by a number of brigands. One member was caught in the act of committing the identical crime

involved in this appeal. He pleaded guilty and was sent to prison. His wife was not to be found. She had left the premises. Within less than an hour after the occurrence at the theater, appellant appeared at the house with 9 shot wounds on his person. His arm was broken and he was bleeding profusely. In company with the woman who had been living in the house with him, he immediately abandoned the place, leaving therein the articles marked Exhibits N to Y, and fled to another state for the conceded purpose of avoiding the consequences of the theater affair. The rooms were left upset and out of order, the door unlocked and no person remained in the house. Under these circumstances there was no invasion of appellant's domicile or interference with his personal rights such as was contemplated by the constitutional provision. We know of no rule of evidence to prevent the state from procuring and using as evidence, either against the owner or another, in a criminal prosecution, property abandoned by the owner when accused of crime and while fleeing the state for the purpose of avoiding the consequences of the crime. The foregoing disposes of appellant's first 4 assignments of error.

By the fifth assignment of error it is contended that it was error to receive proof of other crimes alleged to have been committed in the vicinity. It is argued that the evidence does not disclose a conspiracy between the accused parties so as to justify the reception of proof of other crimes of a similar kind. The answer is that the record does not purport to contain all the evidence. For that reason its sufficiency cannot be considered upon this appeal. However, it may be said that the record does contain sufficient showing to warrant the conclusion that there was a concerted action on the part of Ryan, Freeman and O'Loughlin, of robbing stores and theaters. State v. Thaden, 43 Minn. 253, 45 N. W. 447; State v. Dunn, 140 Minn. 308, 168 N. W. 2; State v. Smith, 144 Minn. 348, 175 N. W. 689.

The claim of the appellant that he received his wounds some miles south of St. Paul on the morning in question, while engaged in bringing in a quantity of contraband liquor, was submitted to the jury and by its verdict an adverse finding was returned.

We find no reversible error in the rulings upon the admissibility of evidence, the charge nor in the remarks of the county attorney upon the trial.

Affirmed.