## STATE v. GEORGE*

(No. 1180; December 23, 1924; 231 Pac. 683)

CRIMINAL LAW—SEARCHES & SEIZURES—CONSTITUTIONAL LAW—REASONABLE SEARCH—ARREST WITHOUT WARRANT—LARCENY—CONSTRUCTION.

1. In view of Const. art. 1, §§ 4, 11, evidence obtained by unlawful search cannot be used against defendant.
2. Rule prohibiting use against defendant of documents obtained by unlawful search applies as well to any property so obtained.
3. Constitutional inhibition of unreasonable search and seizures is a limitation only on powers of government or its agents.
4. Receipt of evidence obtained by lawful search and seizure is not violation of Const. art. 1, § 11, declaring one not obliged to testify against himself.
5. Whether search is reasonable is under Const. art. 1, § 4, a judicial question affecting which courts must consider constitutional guarantee that no man shall be compelled to testify against himself.
6. Only unreasonable searches are forbidden.
7. As a general rule every search not made under warrant which conforms to Constitution and laws is unreasonable.
8. Where an officer had been informed and had reasonable grounds to believe that stolen sheep were to be found in defendant's flock, then at large on open range, title to which was evidently in federal government, went to such

place, which was some distance from defendant's home, and where he had a right to be, and on becoming convinced that stolen sheep were included in the flock seized them, *held,* such search and seizure was not unreasonable under Const. art. 1, § 4.

9. Court, though warranted in separating motion to suppress evidence and sustaining it so far as good, *held* not required to do so, and failure to suppress evidence obtained by officer acting under illegal warrant, on motion which included request for suppression of other evidence lawfully seized, was not error.

10. Arrest to warrant search must be lawful, nor will fact that search disclosed evidence of crime validate it or make lawful a preceding unlawful arrest; mere belief that offense has been committed being insufficient.

11. Right to arrest without warrant in misdemeanor cases is ordinarily limited to cases of offenses committed in officer's presence.

12. In felony cases, as general rule, officer may arrest without warrant one whom he has reasonable or probable ground to suspect.

13. Evidence *held* to sufficiently show that stolen sheep was in such proximity to, visible to, and distinguishable by officer at time of defendant's arrest as to warrant its seizure and render court's refusal to suppress evidence so obtained not reversible error, particularly in view of evidence of lawful seizure of the sheep.

14. Estrayed sheep which joined defendant's flock on range *held* not within his ''possession,'' within rule that to be guilty of larceny he must have intended to steal them at time he obtained possession, until he has done some act indicative of will to subject them to his control.

15. The giving of instructions not reviewable, in the absence of exception when given.

*NOTE—See Headnotes (1) 16 C. J. p. 571; (2) 16 C. J. p. 571; (3) 35 Cyc. p. 1269; (4) 16 C. J. p. 567; (5) 35 Cyc. p. 1269 (1926 Anno.); (6) 35 Cyc. p. 1269; (7) 35 Cyc. p. 1271; (8) 35 Cyc. p. 1269; (9) 16 C. J. p. 571; (10) 5 C. J. pp. 400, 418, 434; (11) 5 C. J. p. 401; (12) 5 C. J. p. 399; (13) 16 C. J. p. 571; (14) 36 C. J. p. 758.

Appeal from District Court, Albany County; Volney J. Tidball, Judge.

Herman George was convicted of larceny, and he appeals.

*Kinkead, Ellery* and *Henderson,* for appellant.

The search warrant was a nullity, the affidavit being made upon belief, Const. Art. I, Sec. 4; State v. Peterson, 27 Wyo. 185; Wiggin v. State, (Wyo.) 206 Pac. 573; it did not show probable cause; In Re; Tri State Co., 253 Fed. 605; it did not describe the place; Johnson v. Comstock, 14 Hun. 238; Byrnside v. Burdett, 15 W. Va. 702; Com. v. Intoxicating Liquors, 97 Mass. 334; it did not describe the sheep, 24 R. C. L. 714; the search was a violation of constitutional rights; Boyd v. U. S., 29 L. Ed. 746; State v. Bugg, (Kans.) 72 Pac. 236; Bond v. People, 8 Mich. 150; Ivey v. State, 61 Ala. 58; Youman v. Com., (Ky.) 224 S. W. 860; U. S. v. Kraus, 270 Fed. 578; State v. Court, (Mont.) 198 Pac. 362; People v. Marxhausen, 39 A. R. L. 1505; no person shall be compelled to testify against himself; Const. Art. I, Sections 4 and 11; the rule applies to property evidence; Boyd v. U. S. supra; Gouled v. U. S., 65 L. Ed. 647; the admission of evidence procured through unlawful search and seizure was error and it should have been returned; State v. Peterson, supra; Silverthorne Co. v. U. S., 64 L. Ed. 319; U. S. v. Lydecker, 275 Fed. 976; the erroneous admission of evidence is reversible error, 17 C. J. 319, and cases cited. The Court erred in giving instructions numbered 7; Robinson v. State, 18 Wyo. 216; instruction assumed that there was evidence tending to show guilt of defendant; Luyon v. State, (Ariz.) 141 Pac. 706; Merino v. State, 141 Pac. 710; People v. Roberts, 55 Pac. 137; Thomas v. State, 33 So. 250, 25 Cyc. 152; instructions failed to advise the jury that to justify guilt from recent possession of stolen property it must appear that the possession is personal; McNeally v. State, 5 Wyo. 59, 17 R. C. L. 73; the jury was not instructed on the es-

sential law of the case; Gardner v. State, (Wyo.) 196 Pac.
750; the verdict was contrary to the evidence. There was
no evidence to support the finding of intent required in
instruction numbered 6; Hammond v. Thompson, (Mont.)
173 Pac. 229; McManus v. Co., (Minn.) 123 N. W. 1080;
Standard Oil Co. v. Humphries, 88 So. 855; that instruc-
tion was the law of the case and binding upon the jury.
The reading of the search warrant before seizing the sheep
was, at least, an implied coercion; Wiggin v. State, supra;
U. S. v. Slusser, 270 Fed. 818.

*David J. Howell,* Attorney General, *John C. Pickett,*
Asst. Attorney General, and *Geo. W. Patterson,* Prosecuting
Attorney for Respondent.

The seizure of articles in view of the officer at the place
of the crime and at the time of arrest was lawful; Wiggin
v. State, (Wyo.) 206 Pac. 373; State v. Quinn, 3 A. L. R.
1500; L. R. A. 1916 C. 1017; State v. Barella, (N. Mex.)
168 Pac. 545; instruction number 7 correctly stated the
law governing the possession of recently stolen property
and instruction number 6 strongly favored defendant,
but no exceptions were taken to the giving of either in-
struction; Smith Drug Co. v. Casper Drug Co., 5 Wyo.
510, 2 R. C. L. 96; no exceptions will be regarded unless
prejudicial Sec. 4599; C. S. Kahn v. Ins. Co., 4 Wyo. 419;
Pardee v. Kuster, 15 Wyo. 368; Eads v. State, 17 Wyo.
490; Yount v. Strickland, 17 Wyo. 526; every reasonable
presumption will obtain in support of the judgment.
Nott v. Johnson, 70 So. 270; Robbins v. Barton, 50 Kans.
120; Omaha Bank v. Kiper, 16 Nebr. 22; the arresting of-
ficer will take into his possession the instruments of the
crime, and such property or evidence which he believes is
connected with the offense; State v. Mausert, 95 Atl. 991;
State v. Brown, 145 Pac. 69; People v. Cona, 147 N. W.
525; Yeoman v. Com., 224 S. W. 860; the arrest could have
been made without a warrant, 5 C. J. 399; Smotherson v.

State, 37 So. 376; the cause was properly submitted and the evidence was sufficient to sustain the judgment.

*Kinkead, Ellery* and *Henderson* in reply.

The briefs filed by the Attorney General and County Prosecutor are in some respects conflicting, it is probable that the brief of the County Attorney was filed without authority, 1554 C. S. 1920. The contention that a search and seizure made incidental to the arrest was valid is not supported by the Wiggins case, nor the cases cited in that opinion; Smith v. Jerome, 93 N. Y. S. 202; State v. Brown, (Wash.) 145 Pac. 69; Weeks v. U. S., 58 L. Ed. 652; the affidavit made on belief, did not meet the requirements of Art. I, Sec. 4 of the Const. State v. Gleason, 4 Pac. 363; an information made on belief is insufficient; State v. Boulter, 5 Wyo. 236; State v. Peterson, 27 Wyo. 185; Johnson v. U. S., 87 Fed. 187; State v. McLain, (N. D.) 102 N. W. 407; the search and seizure was more than incidental, it was unauthorized; Goule v. U. S., 65 L. Ed. 647; the point was discussed in the Wiggin case; People v. Brocamp, (Ill.) 138 N. E. 728; State v. Miller, (Wash.) 209 Pac. 9; Colyer v. Skeffington, 265 Fed. 17; Flagg v. U. S., 233 Fed. 481; U. S. v. Mounday, 208 Fed. 186; we doubt whether arrest without warrant is permissible in this State, unless the person arrested is found in the actual violation of law; 7349 and 7350, C. S. 1920, 5 C. J. 395; there was no evidence of intent to steal the property and instruction number 6 was apparently disregarded hence the evidence is insufficient to support the verdict.

BLUME, Justice.

The defendant was convicted of stealing 33 head of sheep in Albany County, the property of one W. S. Pickens, and he appeals.

The defendant owned and occupied a farm in said county, about five miles north and west of the range of the complaining witness where the sheep in question, together with others to the number of about 4000, were grazing.

A storm from the southwest struck this range about November 18, 1921, and about 2000 of the sheep drifted away from the herd in a northerly direction. Either during the storm or immediately thereafter a number of the sheep drifted upon the range of the defendant, and were found there about November 20, 1921. Within a few days after the storm most of the sheep that were lost were found and recovered, but 200 of them were still missing. About November 28, 1921, Pickens, as he testified, saw one of his sheep among the band of sheep owned by defendant. These sheep of defendant were grazing on the open range, quite a distance away from the home of defendant, on land, so it would seem, owned by the government of the United States, but occupied as it was by defendant's sheep, no one else used this range. Defendant, it seems, had constructed a corral on this land, into which his sheep were driven for the nights. On the evening of December 4th, 1921, Pickens visited the defendant's sheep just as they were being driven into the corral, at which time, as he claims, he saw a number of his sheep in defendant's band. He thereupon, on the same day, filed an information with a justice of the peace, and a warrant was issued substantially in the form as the warrant considered by us in the case of Wiggin v. State, 28 Wyo. 480, 206 Pac. 373, and it is conceded that this warrant was invalid as a warrant of search and seizure. Thereafter, on the same evening of December 4th, 1921, Pickens and the deputy sheriff Steadman visited the defendant's sheep, which had then been driven into the corral, and he and the deputy sheriff examined one of them, by flashlight, and the latter "satisfied" himself that the sheep examined belonged to Pickens. On the morning of December 5, 1921, said Pickens and said deputy sheriff, accompanied by other men, drove to defendant's home. The latter came out of his home, was arrested by the deputy sheriff and informed of the intention to search for stolen sheep. One sheep, which was among a few other sheep near the barn or shed of

defendant, was examined and seized. The searching party, accompanied by defendant, then proceeded to defendant's band of sheep on the open range, and examined and seized 32 more sheep which Pickens claimed as his own. Before the trial of the case the defendant made a motion for the return of said sheep and for the suppression of the evidence obtained through the search and seizure aforesaid. The court overruled the motion. Later, immediately before the commencement of the trial of the main case, testimony was taken in connection with the foregoing motion, evidently for the purpose of reinvestigating the subject. At the close of the taking of such testimony the defendant objected to the reception of any evidence obtained through the search and seizure aforesaid. This objection was overruled. The main question in the case is the correctness or incorrectness of these rulings of the trial court, the defendant claiming the protection of our constitutional provisions relating to search and seizure and providing that no person shall be compelled to testify against himself in a criminal case.

1.   Section 4 of Art. I of the Constitution of this state provides:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched and the person or thing to be seized."

And Sec. 11 of the same article provides:

"No person shall be compelled to testify against himself in a criminal case."

These provisions were considered by this court in State v. Peterson, 27 Wyo. 185, 194 Pac. 342, 13 A. L. R. 1284, and Wiggin v. State, 28 Wyo. 480, 206 Pac. 373. In the

former of the two cases we held that property seized under a void search warrant was properly ordered returned to the person from whom it was taken and that evidence illegally obtained pursuant to such warrant should, on timely application therefor, be suppressed. In so holding, the court followed the decisions of the Supreme Court of the United States and of many of the states, and refused to follow a line of decisions which hold that if evidence is competent and relevant it will be admitted regardless of the method by which it was obtained. Both of the foregoing constitutional provisions were referred to in the Peterson case, as well as the Wiggin case, but their interrelation was not clearly pointed out, and it will be necessary here to do so in view of the contentions that are made herein by the defendant. These provisions of our Constitution find their counterpart in the fourth and fifth amendments of the federal constitution and in the constitution of practically every state, and have frequently been under consideration by the courts in the last few years. Let us first direct our main attention to the last. Some of the authorities hold that the guarantee that no person shall be compelled to testify against himself is limited to criminal cases where it is sought to have a defendant testify against himself as a witness, or where a defendant has been compelled himself to produce testimony. See for instance Hall v. Com., (Va.) 121 S. E. 154; Haywood v. U. S., (C. C. A.) 268 Fed. 795, 802. This view is, we think, inconsistent with our holding in the Peterson case. The effect of evidence pursuant to search and seizure was to some extent considered in the case of Entick v. Carrington, 19 Howe State Trials 1029, 1073, where it was said:

"Lastly it is urged as an argument of utility that such search is a means of detecting offenders by discovering evidence. I wish some cases had been shown, where the law forceth evidence out of the owner's custody by process. * * * It is very certain that the law obligeth no man

to accuse himself; because the necessary means of compelling self-accusation, falling upon the innocent as well as the guilty, would be both cruel and unjust; and it should seem, that search for evidence is disallowed upon the same principle. There too the innocent would be confounded with the guilty.''

In the case of Boyd v. United States, 116 U. S. 616, 633, 6 Sup. Ct. 524, 534, 29 L. Ed. 746, the court considered the unlawful seizure of private papers, and said among other things:

''We have already noticed the intimate relation between the two amendments. They throw great light on each other. For the 'unreasonable searches and seizures' condemned in the fourth amendment are almost always made for the purpose of compelling a man to give evidence against himself which in criminal cases is condemned in the fifth amendment; and compelling a man 'in a criminal case to be a witness against himself,' which is condemned in the fifth amendment, throws light on the question as to what is an 'unreasonable search and seizure' within the meaning of the fourth amendment. And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself.''

The case of State v. Slamon, 73 Vt. 212, 50 Atl. 1097, 87 A. S. R. 711, follows the Boyd case, the court saying:

''The seizure of a person's private property to be used in evidence against him is equivalent to compelling him to be a witness against himself and in a prosecution for a crime is within the constitutional prohibition.''

In the case of Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915 B. 834, Ann. Cas. 1915 C. 1177, the court suppressed letters unlawfully seized in the home of defendant. While mentioning both the fourth as well as the fifth amendment of the federal constitution, the decision does not refer particularly to the interrelation of the two and appears to be based mainly upon the provisions of the former. But in the still later case of Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, the court distinctly ruled that to permit papers unlawfully seized to be used in evidence would be, in effect, as ruled in the Boyd case, to compel the defendant to become a witness against himself. The court said in part:

"In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself, or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the 5th amendment forbids that he shall be compelled to be a witness against himself in a criminal case."

The foregoing cases, it is true, related to documents obtained by unlawful search. There does not, however, appear to be any difference in principle between documents which may be used in evidence against a defendant and any other property which may be so used. That fact is recognized in the case of Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, where the court held that whiskey unlawfully seized should, on application, be returned to the owner, and any testimony relating thereto, given by the government agents who made the unlawful seizure, should be excluded, as in violation of both the fourth as well as the fifth amendment of the Constitution of the United States.

In an exhaustive opinion by the Supreme Court of Missouri, in the case of State v. Owens, 259 S. W. 100, 105, (32 A. L. R. 383), it was said:

"If the officer enter the dwelling of one not charged with a crime, and by stealth and forcibly without a warrant or any legal authority obtains papers of an incriminatory nature, it is almost universally held that such papers may not be produced in evidence. What difference does it make if the officer, by the same unlawful method discovers property, the implements for the commission of crime? Suppose an officer by that means discovers a letter or cancelled check, showing the defendant has violated the law by importing liquor; what is the difference between that and the discovery of liquor? One fact is exactly as significant as the other. The discovery of evidence of the offense occurs in exactly the same way. The fact that the defendant had no right to the liquor, that it is already forfeited to the state as contraband, does not affect the quality of the evidence."

In the case of Tucker v. State, 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, the property involved was a still and some liquor, and the court said:

"The courts are unanimous in holding that the constitutional guaranty against self-incriminations is violated by confession of guilt extorted from a defendant by duress. What is the difference in principle in forcing a defendant to speak against himself by word of mouth, and in forcing, by an unlawful search, the secret things of his home to give evidence against him? We see none. His home is as sacred from illegal force as his person. When his home speaks, he speaks—they speak with the same voice. The invaders of his home are barred from testifying not only as to his forced confessions of guilt, made by word of mouth, but also to such confessions made through

·the contents of his home and premises. The security afforded by our constitution against unreasonable search and seizure, and self-incrimination, are not to be given a narrow construction. They are a part of our Bill of· Rights.''

In the case of United States v. Kelih, (D. C.) 272 Fed. 484, the court said:

''It is further contended, because the Volstead act provides that there shall be no property rights in illicit liquors, or apparatus for their manufacture, that therefore the property in question does not come within the fourth and fifth amendments. The reason for the return of the property· in all cases of this character is not based upon property rights so much as the personal security afforded by the Fifth amendment, which relieves a man from being compelled to be a witness against himself in a criminal case. To permit the government in this case to retain possession of the property described in the motion, and use it in the trial of the case before the jury, would be in legal effect to require this defendant to be a witness against himself in a criminal case, which is clearly prohibited by the constitution.'' ·

In the case of Snyder v. United States, (C. C. A.) 285 Fed. 1, reversing (D. C.) 278 Fed. 650, the property involved was intoxicating liquor, and the court said:

''The federal courts have therefore adopted the policy of excluding evidence illegally obtained by a federal officer, whether the evidence so obtained was by unlawful invasion of his home or person, on the ground that to hold otherwise would be to require him to supply evidence against himself.''

This case was followed in United States v. Myers, (D. C.) 287 Fed. 260.

In the case of People v. Brocamp, 307 Ill. 448, 138 N. E. 728, it appears that officers entered defendant's home by force, unlawfully searching it without a warrant, and seized property claimed to have been stolen. The court held that the evidence thus obtained should have been suppressed, upon timely application made for the purpose, saying, among other things:

"There can be no question but that plaintiff in error has been compelled, under the showing in the record, to give or furnish evidence against himself, in violation of his constitutional rights."

In Woods v. United States, (C. C. A.) 279 Fed. 706, the unlawful seizure of narcotics was involved. The court said:

"The warrant thus being void, nothing that was procured under it could be used as evidence against defendant. To allow this to be done would be in effect to compel the defendant to become a witness against himself, in violation of the Fifth Amendment to the Constitution of the United States, which reads: 'No person * * * shall be compelled in any criminal case to be a witness against himself.' "

To the same effect as the forgoing cases are Legman v. U. S., (C. C. A.) 295 Fed. 474; State v. Wills, 91 W. Va. 659, 114 S. E. 261; 24 A. L. R. 1398; People v. Castree, 311 Ill. 392, 143 N. E. 112; 32 A. L. R. 357; Gore v. State, (Okl. Crim. App.) 218 Pac. 545; Batts v. State, (Ind. Sup.) 144 N. E. 23; Hughes v. State, 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639.

From the foregoing illustrations it clearly appears that the constitutional provisions above referred to stand somewhat in the same relation as cause and effect. Given an

unlawful governmental search and seizure and the intro-
duction of evidence procured thereunder will have the
effect of compelling the party who or whose property has
been thus searched or seized to testify against himself in
violation of his constitutional rights that he cannot be
compelled to testify against himself in a criminal case.
The principle is in harmony with, and is merely an appli-
cation of, the ancient principle referred to in Entick v.
Harrington, supra. The assumption by the authorities
holding contrary thereto, that courts will never inquire
into the method as to how evidence is obtained, no matter
how unlawfully, is not well founded, and leaves altogether
out of consideration, for instance, the principle established
long ago that involuntary confessions, induced by agents
of the government, are not admitted in evidence. It will
be noticed that not all unlawful searches and seizures pre-
vent the evidence obtained pursuant thereto from being
used; that is true only when evidence is thus unlawfully
obtained through officers of the law. The constitutional
provision against unreasonable searches and seizures are
a limitation on the powers of government, and the latter,
which can act only through its agents, should not be per-
mitted to do unlawfully what it cannot do lawfully, and
should be bound by the acts of its authorized agents to
the same extent as it should be where a confession is ob-
tained unlawfully by them. See Dukes v. United States,
(C. C. A.) 275 Fed. 142, 146. The rule that evidence un-
lawfully obtained as above mentioned is not based alone
on the constitutional right of an accused to testify against
himself in a criminal case. It rests, in part, as clearly ap-
pears from the cases, on the principle that the courts and
their agencies shall not actually participate in procuring
evidence illegally, and by a rule of evidence make nuga-
tory the rights conferred by the constitution. Gore v.
State, (Okl. Crim. App.) 218 Pac. 545, 550. We should
add that we are not to be understood as passing upon the
question as to what officers of the law are or should be in-

cluded within the meaning aforesaid. The State of Wyoming, while a sovereign state, is, nevertheless, in another sense but a locally and partially self-governing community of the United States. The Constitution of the United States and the laws passed pursuant thereto govern the people of this state as much so as the Constitution and laws of this state. The Government of the United States is not a foreign government in its relation to the Government of the States, the agents of the former are not agents of a foreign government in relation to the latter, and any contrary doctrine could not but be deprecated as sowing pernicious seeds of ultimate disruption of the nation. These factors, and others, should be duly considered when the specific question mentioned comes before us.

We have thus far considered the relation of the two constitutional provisions above quoted in case of an unlawful search and seizure by officers of the law. What is the situation if the search and seizure is lawful? It is true, as was observed in the dissenting opinion in State v. Owens, supra, that the introduction of evidence obtained through a lawful search is just as truly compelling a defendant to testify against himself as when such evidence is obtained through an unlawful search, yet we have found no case, and none has been cited, where the evidence has been suppressed in the former case. To hold that it should be, would mean that the provision that no man shall be compelled to testify against himself is paramount, and that no evidence obtained by any search whatever, either pursuant to or without a warrant, could be so used. It would virtually abolish the use of all search warrants. It is possible that when Lord Coke, in 4 Inst. 176, denied the legality of a search warrant even in case of stolen goods, he meant to assert that under no consideration should evidence obtained from a defendant by legal compulsion be used against him. But that opinion did not prevail. In the case of Entick v. Harrington, supra, it was said that "the case of searching for stolen goods crept into the law by imperceptible practice.

It is the only case of the kind that is to be met with.'' See Jones v. State, 19 Ala. App. 232, 96 So. 721; Buckley v. Beaulieu, 104 Me. 56, 71 Atl. 70, 22 L. R. A. (N. S.) 819; Boyd v. United States, supra. And the right to search and seizure has been extended to other cases on the theory that only ''unreasonable'' searches and seizures are forbidden by the Constitution. Com. v. Dana, 2 Metc. (Mass.) 329; Langdon v. People, 133 Ill. 382, 24 N. E. 874; Gouled v. United States, supra; Voorheis v. Faust, 220 Mich. 155, 189 N. W. 1006, 27 A. L. R. 706. Section 11 of Article I of our Constitution was adopted in the light of the then existing practice and we cannot go so far as to hold that evidence obtained through a reasonable and lawful search or search and seizure cannot be used against a defendant. Hence, after all, the ultimate question to be determined in any case where the constitutional provisions referred to, Secs. 4 and 11 of Article 1 of our Constitution, are invoked, is only as to whether or not the search, or search and seizure, was reasonable and lawful. And we shall proceed to consider that subject more fully.

2. As to when a search and seizure is reasonable must necessarily, in view of Section 4 of Article I of our Constitution, be a judicial question. Watson on the Constitution, p. 1417; Agnello v. United States, (C. C. A.) 290 Fed. 671; Haile v. Gardner, 82 Fla. 355, 91 So. 376; McClannon v. Chaplain, 136 Va. 1, 116 S. E. 495, 449 and cases cited. And in arriving at a conclusion the courts must consider the constitutional guarantee that no man shall be compelled to testify against himself. Boyd v. United States, supra. The possession of an apparently lawful warrant is not always the determinative factor as to whether a search or seizure is lawful or not. The power of the legislature to authorize such warrants is limited by the constitution, and it is clear that in some cases the courts would be compelled to hold searches and seizures pursuant to a legislative sanction to be unlawful, as was actually done in the Boyd case. Agnello v. United States, supra; Gouled v. United States,

supra; Boyd v. United States, supra. In England the right seems to be very limited, at least as to homes. Lieber, in his work on Civil Liberty and Self-Government, 62 (as quoted in the Weeks case, supra) speaking of the English law, says: ''Accordingly no man's house can be forcibly opened, or he or his goods be carried away after it has thus been forced, except in cases of felony.'' We need not pursue that particular subject further, for the reason that in the case at bar, it is conceded that the officer who searched and seized the property in question had no lawful search warrant, but we mention it to show that, after all, the courts must in all cases determine, from all the circumstances of a case, whether a search is reasonable or not, and that is true whether it is made with or without a warrant. Not all searches and seizures are forbidden, but only those that are unreasonable. Agnello v. United States, supra; O'Connor v. United States, (D. C.) 281 Fed. 396; State v. Lock (Mo.), 259 S. W. 116, 124; People v. Chiagles, 237 N. Y. 193, 142 N. E. 583, 32 A. L. R. 676. Generally speaking, no search, or search and seizure, is reasonable or lawful, unless made under a search warrant which is in due conformity with the constitution and the laws. Agnello v. United States, supra; Youman v. Com., 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303; People v. Castree, 311 Ill. 392, 143 N. E. 112; 32 A. L. R. 357; State v. Lock (Mo.) 259 S. W. 116; State v. Wills, 91 W. Va. 659, 114 S. E. 261, 24 A. L. R. 1398; State v. District Court (Mont.) 224 Pac. 862; State v. District Court, (Mont.) 225 Pac. 1000. This must necessarily be true when we bear in mind the history of the subject. For as the authorities herein cited show, general warrants were universally condemned long prior to the adoption of the Constitution of the United States, and a search, or search and seizure, without a lawful warrant, but made simply to enforce a particular law, is in effect the same as a search and seizure made under a general warrant of search, and hence the cases in which there can be a valid search of a defendant's house, his papers and effects, or a

seizure pursuant to such search, without a lawful search warrant, are few. Courts have generally held that, with the exception hereinafter mentioned in case a lawful arrest is made, the person and his home and the things in immediate association with him cannot be searched without a lawful search warrant; that in all such cases the search is unreasonable. See Hoyer v. State, 180 Wis. 407, 193 N. W. 89, 27 A. L. R. 673, in addition to the cases already cited. But whether or not courts should go beyond that is another question. In the case at bar 32 head of sheep were seized upon lands quite a distance from defendant's home, on the open range, the title of which was evidently in the Government of the United States. The defendant had no right or interest therein, except as one of the public generally. He had built a corral upon the premises, but that did not give him the exclusive right to the possession of the land, and any other person, including officers of the law, had just as much right to go upon these lands as had the defendant. And the question arises whether or not the latter's property was, under the circumstances, secure from search and seizure, without a lawful search warrant, at this place. The constitutional guarantee referred to relates to persons, their houses, papers and effects. The search and seizure above mentioned affected neither the defendant's person, nor his houses, nor his papers. Even though the sheep referred to would be included in the term "effects" mentioned in the constitution, the question still remains, since only "unreasonable" searches and seizures are forbidden, whether the search and seizure in this case was so. It would seem clear that the place where it is made is one of the factors to be taken into consideration in determining that point.

In the case of Falkner v. State (Miss.) 98 So. 691, it appears that the constitution of Mississippi provides that "the people shall be secure in their persons, houses and *possessions.*" The court held that the language of this constitution is somewhat broader than the words "papers and effects;" that the constitution meant to protect all of the

property of a citizen, and that a search and seizure of a still on wooded land of defendant, away from his home, was unlawful. That case, unless distinguishable, is opposed to all the other cases which we have found on the subject. In the case of Bowling v. Com., 193 Ky. 642, 237 S. W. 381, the defendant operated a still in the open, on land not belonging to him. A search and seizure of it without a warrant was held not to be unlawful, the court saying in part:

"The appellant had no greater right to operate the still on the land than had the officers of the law to enter it; hence the possession of a search warrant by them was unnecessary."

In the case of Brent v. Com., 194 Ky. 504, 240 S. W. 45 (1922), a still some 350-400 yards from defendant's residence was seized without a warrant and destroyed. It was held that the search was not unlawful, that the constitutional provision (Art. 10) against unreasonable search and seizure protected only "the intimate things about one's person," the court saying:

"We have been able to find no decision in which article 10 of the Constitution has been construed as prohibiting the searching of woodland, somewhat remotely situated from the residence of the owner. Neither have we been cited to any case in which the Fourth amendment to the federal constitution has been so extended. * * * Constitutional provisions of this kind rest on the fundamental principle that every man's house is his castle, and is inviolable. And we repeat that we have been cited to no case in which such a provision has been held to grant immunity from search and seizure of an unlawful thing situated in a woodland remote from the residence of the owner."

To the same effect as the foregoing cases are Colton v. Com., 200 Ky. 349, 254 S. W. 1061; Duke v. Com., 201 Ky. 365, 256 S. W. 725; Francis v. State, (Okl. Crim. App.)

221 Pac. 785; Barton v. State, (Okl. Crim. App.) 222 Pac. 272; McClannon v. Chaplain, 136 Va. 1, 116 S. E. 495; Hester v. United States, (1924) 265 U. S. 57, 44 Sup. Ct. 445, 68 L. ed. 898; Ratzell v. State, (Okl. Crim. App.) 228 Pac. 166. In the Hester case the Supreme Court of the United States, through Mr. Justice Holmes, said:

"The special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl. Comm. 223, 225, 226."

In the Ratzell case, the Supreme Court of Oklahoma, speaking of the constitutional provision against unreasonable searches, said:

"We think it would be stretching the meaning and purpose of this provision of our constitution too far to hold that these terms include a place in an unfrequented ravine or pasture, not near the place of abode, where a seizure would in no way disturb the privacy of the home or the business or occupation of the suspected violator of· the law. These constitutional and statutory provisions were not designed to protect boot-leggers, rum runners, or other law violators. They were designed for the protection of innocent persons against arbitrary and unreasonable searches that invade the privacy of the ordinary affairs of life. One who goes into the woods, thickets or pastures of sparsely settled communities in search of contraband goods is not necessarily a trespasser, and a search for outlawed goods in such a place may not be 'unreasonable' within the meaning of the constitution. Gibbons v. Ogden, 9 Wheat. 1; 6 L. Ed. 23."

We believe the reasoning of these cases is directly applicable to the case at bar in so far as the search and seizure of the 32 sheep on the open plain is concerned. The

evidence shows that the owner thereof had on a previous day recognized that some of his sheep were among the defendant's band of sheep; that the former were easily distinguishable on account of their wool and their size. In any event very strong reasons existed for thinking that the sheep of the complaining witness had been stolen and that they were in defendant's band. To say that under these circumstances the officer of the law, who had been informed of the facts by the complaining witness, and who had satisfied himself thereof by an examination made at a place where he had a right to be, was not authorized to interfere and seize the stolen sheep, or for that matter examine them in order to become convinced of facts which he had reasonable grounds to believe, would be, in our judgment, unreasonably stretching the constitutional provision invoked. No privacy of the home or the person, or of things intimately associated with a person, was invaded. That privacy is protected. But the function of government is not limited to that. To make persons secure in their property and protect them against the invasion of thieves who have no regard for the rights of others, is just as important, and without it, in fact, our civilization would vanish. Whether searches and seizures are unreasonable depends, to some extent at least, upon the articles procured and the circumstances under which they were obtained. State v. Ryan, 156 Minn. 186, 194 N. W. 396. And we are constrained to hold that the search and seizure made as above stated was not unreasonable, within the meaning of Sec. 4 of Article 1 of the Constitution, and that the motion for the suppression of evidence pursuant thereto and the return of the 32 head of sheep, and the objection to the admission of such evidence, were properly overruled.

3. In addition to the 32 head of sheep above mentioned, one head was found and seized near the home or barn of the defendant. In the motion first filed by the defendant he asked the court for an order to "return, deliver and

redeliver the said 33 head of young sheep, taken as aforesaid, unto said Herman George, and * * * to suppress any and all evidence and testimony arising from the execution and service of said so-called search warrant, procured thereby.'' Later, before the commencement of the trial, the defendant objected ''to the evidence of any witness whose testimony is based upon and obtained from an examination of the sheep alleged to have been stolen, or any of them, and that were taken * * * by authority of an alleged search warrant.'' It will be noted that there was no motion regarding, or objection to, the search and seizure of the one head of sheep at or near the barn or the evidence obtained pursuant thereto, separate and apart from the motion and objection which related to all of the sheep and to the evidence as a whole obtained pursuant to the search. We are inclined to think that while the court might in its discretion have separated the motion, sustaining it so far as good, it was not bound to do so. See Stickney v. Hughes, 12 Wyo. 397, 412, 75 Pac. 945. Aside from that, we may well consider here the rule mentioned in Wiggin v. State, supra. In that case we said:

''The law is well settled that an officer has the right to search the party arrested and take from his person and from his possession property reasonably believed to be connected with the crime, and the fruits, means or evidences thereof, and he may take and hold them to be disposed of as the court directs * * *. Nor can there be any doubt that where property of that character is, at a place to which lawful access has been obtained, visible to the officer, ready to be taken, that he may, upon the lawful arrest of the defendant, seize and take it into his possession.''

In addition to the cases there cited see People v. Milone, 119 Misc. Rep. 22, 195 N. Y. S. 488; Argetakis v. State, 24 Ariz. 599, 212 Pac. 372; Royce v. Com., 194 Ky. 480, 239

S. W. 795; O'Connor v. United States, (D. C.) 281 Fed. 396; Com. v. Grasse, 80 Pa. Super. Ct. 480.

Not every arrest, of course, will warrant a search and seizure: It must be a lawful arrest. It will not be lawful, at least without a legal warrant, if made simply to make a search in connection therewith in order to discover whether a defendant has violated the law. The mere discovery of evidence of a crime pursuant to a search will not validate a search, or make lawful an arrest that would otherwise be unlawful. In cases of misdemeanor, the right to arrest without a warrant is limited, ordinarily at least, to cases where the offense is committed in the presence of the officer. Information, in such case, justifying him in the belief that an offense has been committed, will not authorize him to make an arrest. The facts constituting the offense must have been within the knowledge of the officer, and that knowledge must have been revealed and the facts capable of being observed in the officer's presence. Hughes v. State, 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639; Batts v. State, (Ind. Sup.) 144 N. E. 23; Youman v. Com., supra; United States v. Kaplan, (D. C.) 286 Fed. 963; United States v. Slusser, (D. C.) 270 Fed. 818; People v. Jakiva, 118 Misc. Rep. 303, 193 N. Y. S. 306; People v. De Vasto, 198 App. Div. 620, 190 N. Y. S. 816; State v. Wills, supra; Helton v. Com., 195 Ky. 678, 243 S. W. 918. Where a felony has been committed, the right of arrest without a warrant is broader than in cases of misdemeanor; and according to the general rule, which we have no reason to doubt is in force in this state, a peace officer may arrest without a warrant, one whom he has reasonable or probable grounds to suspect of having committed the felony. 5 C. J. 399. The case at bar is one of that class. The officer had probable ground to believe that a felony had been committed and that defendant was the guilty party. He went upon the premises of the latter and arrested him; his presence there was lawful and his arrest of defendant lawful. As the officer drove up to defend-

ant's house, the latter came out and it was outside of the house, in the yard of defendant, where the arrest took place. The yard was uninclosed. The court had a right to find from the evidence that close to the house—just how close does not appear,—stood a barn or shed and by it stood a bunch of sheep, among which was the one sheep in question; that it was readily distinguishable from the other sheep by reason of its wool and its size, and that it was, so far as we are able to judge from the evidence, visible to the officer. We should, at least, not be warranted by the testimony in the record to say the contrary. Even though the evidence is not altogether clear that it was plainly visible, there is evidence to show that the property was substantially in the presence of the officer, and we do not feel warranted to reverse the action of the lower court in reference to the motion and objection in so far as now under consideration, particularly in view of the testimony relating to the 32 head of sheep, which was properly admitted, so that the admission of testimony as to the one sheep, closely interwoven as it was with the testimony relating to the other sheep, would not be reversible error.

4. The court instructed the jury to the effect that in order to convict the defendant they must find that he took the sheep in question with a felonious intent to convert them to his own use. Among other things the court said:

"It is not sufficient, if the jury find that the defendant took the sheep in question, to convict him of the charge alleged, to find that after he obtained possession of the same, he then formed an intent to steal the said sheep in question."

No objection is made to this instruction, but it is rather insisted that it was the law of the case which the jury was bound to follow; that they necessarily found by their verdict that an intent to steal the sheep existed at the time that he obtained possession of the sheep, but that such find-

ing is contrary to the evidence. The sheep were lost in a
storm, drifted about the country, and probably onto the
land of defendant. Hence counsel think that the intent to
steal, if any was formed, was necessarily formed after
defendant had gained possession of the sheep. We think,
however, that counsel misconstrue what the court meant
by ''obtaining possession.'' Simply because the sheep en-
tered upon defendant's lands, they were not for that rea-
son necessarily in his possession. Until he did some act
indicative of the will to subject them to his control, the
sheep remained estrays, and at least in the constructive
possession of the owner. See 36 C. J. 758. Richey v.
State, 28 Wyo. 117, 132, 201 Pac. 154, 205 Pac. 304.

5.   The court gave the following instruction:

''The court instructs that if the jury believes from the
evidence that the property mentioned in the information
was stolen from the owner or owners, and that shortly
thereafter the same was found in the possession of the de-
fendant, and defendant has failed to explain how he ob-
tained such possession, his failure to make such explana-
tion may be considered by the jury and given such weight
as they deem proper, in connection with the other evi-
dence, tending to show guilt.''

A number of objections are raised to this instruction,
among which are that the instruction assumes that there
was other evidence of guilt; that defendant did explain
his possession, and that in no event does the recent pos-
session of stolen property give rise to any inference of
guilt unless that possession is personal or exclusive. We
cannot enter into a consideration of these questions. No
exception was taken to the instruction and the objections
mentioned are now urged for the first time on this appeal.
We are cited to the case of Gardner v. State, 27 Wyo. 316,
196 Pac. 750, 15 A. L. R. 1040, wherein we held that an in-
struction on circumstantial evidence should have been

given under the circumstances. We fail to find the application of that case to this. The instruction objected to in this case was not such vital and essential instruction as that with which we dealt in the Gardner case.

We find no reversible error, and the judgment of the trial court should accordingly be affirmed, and it is so ordered.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.