## STATE v. BONOLO
(No. 1490; October 16, 1928; 270 Pac. 1065)

*M. C. Burk,* for appellant.

*W. O. Wilson,* Attorney General, *John Dillon,* Special Assistant Attorney General, for respondent.

BLUME, Chief Justice.

John Bonolo, the defendant, was convicted of having in his possession a still for the manufacture of intoxicating liquor and was sentenced by the court, and from this conviction and sentence he has appealed to this court.

On May 24, 1927, one J. W. Thompson filed an affidavit before E. H. Fourt, Judge of the District Court, to the effect that one Rudolph Visco was the occupant of the Bonolo ranch, described as the W½NE¼, NW¼SE¼, NW¼SE¼, Sec. 34, Twp. 1, Range 3, East W. R. M., in Fremont County, Wyoming; that on May 17, 1927, a person known to affiant as a person engaged in the liquor traffic, and who had had trouble with Rudolph Visco and other persons, and in whom affiant had confidence as to his truth and veracity, told affiant that a still for the manufacture of intoxicating liquor was being operated on the foregoing premises by Rudolph Visco, and affiant asked that a search warrant be issued for the search of the premises. Such warrant was thereupon issued and delivered to a deputy sheriff, who, together with Ray Ivester, a Federal prohibition officer, proceeded to the Bonolo ranch. When close to the residence on that place, they noticed at one corner of the house some twenty to twenty-five sugar sacks and two copper boilers, one an ordinary one frequently used for washing, and another round boiler, usable, perhaps, for various purposes. Ivester further testified that he smelled the odor of some mash. His testimony, however, is somewhat uncertain as to whether he noticed this odor previous to the time of entering upon the Bonolo premises or subsequent thereto. He was not corroborated in that regard by the deputy sheriff,

who testified that he noticed no odor till they went onto the Bonolo place. Armed with the search warrant above mentioned, without, however, using or disclosing it, they went to the house on the ranch, where the defendant, together with his wife and children, were living. The defendant was not there, and the officers found only the defendant's wife and daughter at home, who were apparently outside of the house. The deputy sheriff asked for Rudolph Visco, but was told that he was not there, but had left. Ivester testified that he informed Mrs. Bonolo that he was an officer and asked her if she had any objection to a search of the premises, to which she responded something like this: "No, go ahead, I can't help it." This statement of Mrs. Bonolo is not corroborated by the deputy sheriff, and is denied by the daughter. In any event, the two men searched the basement of the house and a cellar close by, and found some mash and a still. About an hour later, when defendant returned home, he was placed under arrest, and was subsequently charged with the possession of a still. Before the case came on for trial, the defendant made a motion to suppress the evidence obtained in connection with the search. The court overruled the motion, and upon the trial of the case, admitted such evidence over the objection of the defendant. These rulings of the court are assigned as error here. The jury apparently hesitated to convict the defendant, for while deliberating, they asked the court the following question: "Is it essential for the officers to produce a search warrant or obtain permission to search, and from whom?" Thereupon the court gave the following instruction, numbered 12:

"The Court instructs the jury that it is not essential for the officers to produce a search warrant if they see evidence which leads them to believe that a felony is being committed and if any other of their natural senses, such as the sense of smell, conveys such information to the officers, they may arrest without a warrant and make a

search of the premises where they know the offense is being committed. The jury are further instructed that any person who owns or has control of a house or landed estate may consent to a search thereof, and when such consent is given the officers are at liberty to go ahead and make such search as they may deem proper.''

1.   To the motion to suppress the evidence the county attorney filed an answer admitting, among other things, that the deputy sheriff and Ray Ivester, when searching the Bonolo ranch as above set forth, were not in possession of a search warrant authorizing the search at the time it was made. The motion to suppress and the main case seem to have been heard and tried by the State upon the theory that while the search warrant issued in the case was invalid, the search was authorized to be made without reference to the possession of a search warrant. The state makes no contention in this court that the search warrant was sufficient, and we may therefore, for the purposes of this opinion, assume the invalidity thereof. See, in this connection, State v. Peterson, 27 Wyo. 185, 194 Pac. 342, 13 A. L. R. 1284, which contains a thorough discussion on the subject. See also Jackson v. State, 153 Tenn. 431, 284 S. W. 356; Coleman v. Commonwealth, 219 Ky. 139, 292 S. W. 771; Hammond v. Commonwealth, 218 Ky. 791, 292 S. W. 316; Derefield v. Commonwealth, 221 Ky. 173, 298 S. W. 382; Taylor v. Commonwealth, 221 Ky. 216, 298 S. W. 685; Matlock v. State, 155 Tenn. 624, 299 S. W. 796; Cole v. State, (Ok. Cr.) 262 Pac. 712; Cornelius on Search and Seizure, Sec. 85.

2.   The state makes no contention in this court that any valid consent was given to the search above mentioned by Mrs. Bonolo, and seems to have abandoned the position that apparently was taken, at least by the trial judge. Inasmuch, however, as the point might arise again in the further disposition of this case, it is, perhaps, proper to mention it briefly. We need not decide as to whether a

wife can ever waive the constitutional rights of her husband in this respect, though the Kentucky cases hereafter cited seem to decide in the negative. We do not believe that any valid consent was given, and that the testimony at most shows acquiescence in and non-resistance to the action of officers of the law. The subject was discussed at length in the case of Tobin v. State, 36 Wyo. 368, 255 Pac. 788, and it was there held that evidence obtained by a search, where consent is claimed, can only be used where the testimony shows clearly that the consent was really voluntary and with a desire to invite search, and not done merely to avoid resistance. Quoting part of the opinion, it was said:

"First of all we believe that a waiver of the citizen's fundamental constitutional rights must appear by clear and positive testimony, and if the search and seizure are based upon the proposition that consent was given to the officers, there should be no question about it in the evidence submitted."

In the case of United States v. Rembert, 284 Fed. 996, it was held that in order to constitute consent, the submission to the officers of the law must be really voluntary, and with a desire to invite search. The case of Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, seems to be decisive of the case at bar, for in that case the court seems to hold squarely that a coercive situation is implied from the presence of the officers of the law and that the wife who consents to a search is for that reason relieved from the implication that there was any purpose on her part to waive any rights of her husband and that there was in fact no such waiver. The court says in part:

"The contention that the constitutional rights of defendant were waived when his wife admitted to his home the government officers, who came, without warrant, demand-

ing admission to make search of it under government authority, cannot be entertained. We need not consider whether it is possible for a wife, in the absence of her husband, thus to waive his constitutional rights, for it is perfectly clear that under the implied coercion here presented, no such waiver was intended or effected."

To the same effect, or throwing more or less light on this subject, see also: People v. Weaver, 241 Mich. 616, 217 N. W. 797; Duncan v. Com., 198 Ky. 841, 250 S. W. 101; Potowick v. Com., 198 Ky. 843; Hart v. Com., 198 Ky. 844, 250 S. W. 108; Veal v. Com., 199 Ky. 634, 251 S. W. 648; Gilliand v. Com., 224 Ky. 453, 6 S. W. (2d) 467; United States v. Rykowski, (D. C.) 267 Fed. 866; In Re Tri-State Coal & Coke Co., (D. C.) 253 Fed. 605; State v. Warfield, 184 Wisc. 56, 198 N. W. 854; Humes v. Taber, 1 R. I. 464.

3. The main and substantially the only contention by the state in this court is that it was not necessary for the officers to have a valid search warrant in order to search the defendant's premises; that the officers had reasonable cause to believe that a felony had been committed, and that, accordingly, they had a right to search the premises without a warrant. The fact that the charge herein is a felony instead of a misdemeanor does not change the law applicable herein. The constitutional rights of one accused of a felony are just as substantial as those of one accused of a misdemeanor. State v. Warfield, supra. And that the contention of the state is wholly unsound has at least been stated in three previous decisions of this court. State v. George, 32 Wyo. 223, 231 Pac. 683; State v. Crump, 35 Wyo. 41, 246 Pac. 241; State v. Kelly, (Wyo.) 268 Pac. 571. The property searched in this case was the home of the defendant, where he, as the head of the family, together with his wife and children, resided. In Wiggin v. State, 28 Wyo. 280, 206 Pac. 373, we held that a proper search and seizure without a warrant is lawful if made incident to a lawful arrest. That case does not apply here, for the reason that the defendant was arrested after the

property had been searched. Hence instruction No. 12 given by the court after inquiry made by the jury was wholly misleading. In State v. George, supra, we held that a search, upon probable cause, may be made in a field disconnected with a home and its curtilage. In State v. Kelly, supra, we held that a search may at times, upon probable cause, be made of an automobile. We cannot, at this time, at least, lay down any general rule as to when property may be searched without a lawful warrant. The only definite rule so far existing is that mentioned in State v. George, supra, that the right to search without such warrant is the exception, and that generally speaking a lawful warrant is required. Agnello v. United States, 290 Fed. 671. The search of a man's home without a lawful warrant, unless incident to a lawful arrest is, as expressed by several courts, "in itself unreasonable and abhorrent to our laws." We said in State v. George, supra:

"Generally speaking, no search, or search and seizure, is reasonable or lawful, unless made under a search warrant which is in due conformity with the constitution and the laws. * * * This must necessarily be true when we bear in mind the history of the subject. For as the authorities herein cited show, general warrants were universally condemned long prior to the adoption of the Constitution of the United States, and a search, or search and seizure, without a lawful warrant, but made simply to enforce a particular law, is in effect the same as a search and seizure made under a general warrant of search, and hence the cases in which there can be a valid search of a defendant's house, his papers and effects, or a seizure pursuant to such search, without a lawful search warrant, are few. Courts have generally held that, with the exception hereinafter mentioned in case a lawful arrest is made, the person and his home and the things in immediate association with him cannot be searched without a lawful search warrant; that in all such cases the search is unreasonable."

The Supreme Court of the United States, in the case of Agnello v. United States, 269 U. S. 20, 46 Sup. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409, said, among other things:

"While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein. * * *. The protection of the Fourth Amendment extends to all equally —to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws. * * * Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See Entick v. Carrington, 19 Howard's State Trials, 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause."

Many other cases hold the same rule. Among them are Searcy v. State, (Ok. Cr.) 244 Pac. 203; Lindsey v. United States, 12 Fed. (2d) 771; Weninger v. United States, 23 Fed. (2d) 38; Thompson v. United States, 22 Fed. (2d) 134; Gildrie v. State, (Fla.) 113 So. 704; Fleming v. Commonwealth, 217 Ky. 169, 289 S. W. 212; Russell v. State, (Ok. Cr.) 256 Pac. 758; Welch v. State, 154 Tenn. 60, 289 S. W. 510; Temperani v. United States, 299 Fed. 365; Connelly v. United States, (D. C.) 275 Fed. 509; Childers v. Comm., 198 Ky. 848, 250 S. W. 106; State v. Warfield, 184 Wis. 56, 198 N. W. 854; Veeder v. United States, 252 Fed. 414. As to what is included in the term "dwelling house," see State v. George, supra; Frank v. Mathues, (D. C.) 17 Fed. (2d) 274; Childers v. Comm., supra; Fleming v. Comm., supra; Mitchel v. State, (Ok.) 259 Pac. 661; Russell v. State, (Ok.) 256 Pac. 758; Welch v. State, 154 Tenn. 60, 289 S. W. 510; Temperani v. United States, supra, State v. Lee, 120 Ore. 643, 253 Pac. 533; Bare v. Comm., 122 Va. 783, 94 S. E. 168; 17 C. J. 437, 438; McFadden on Prohibition, p. 214; Marshall v. Wheeler, 124 Me. 324, 128 Atl. 692.

The evidence obtained in connection with the search and seizure herein should accordingly have been suppressed and should not have been admitted in the trial of the case. It follows that the judgment herein must be reversed and the cause remanded for a new trial. It is so ordered.

*Reversed and Remanded.*

KIMBALL and RINER, JJ., concur.